Good morning, Your Honors. My name is Cori Flanders, and I am the attorney for the appellants in this case. And this case centers around the district court erroneously applying the attorney fee statute under 7430. They used law that was pre-taxpayer Bill of Rights, and their whole outlook on the case jeopardized and harmed the appellants in this case. Under the applicable statute, the appellants are clearly the prevailing parties, and the government does not dispute that fact. Because they are prevailing parties, the government now bears the burden of proof to show that their position was substantially justified. And this is a critical amendment that the taxpayer Bill of Rights imposed, basically holding that the IRS should be accountable when it subjects taxpayers to incur expenses and fees based on their actions. So when they're questioned about it, they should have to come forward and tell the court why they were justified in forcing the taxpayer to incur those expenses. And in this case, the court applied the erroneous standard, and the IRS was not forced to come forward and show that their position was substantially justified. Under its own admissions, the government says that it did not take a position. And in order for them to be substantially justified, their position must be substantially justified. So by definition, they fail under that exception. What does the government's position conclude? Well, like I just said, it's basically they argue that they did not take a position in this case. Well, do you argue they did? No. Basically, if that's the case, then they don't fall under the exception. Being a prevailing party, all you need to show is that you substantially prevailed with respect to the most substantial issue in the case, and we did. They conceded the case. And if they argue they didn't take a position, then I don't see how they can argue that their position was substantially justified in this case.  And what makes this case different than a lot of other cases is the IRS was notified prior to the taxpayers filing their petition to quash and basically said, the notice procedures weren't followed here. The statute of limitations has expired for these documents, and you're requesting documents of a taxpayer who's not even under investigation. The IRS had an opportunity to withdraw this summons, refused to do anything, and forced the taxpayer to file a petition to quash. And it is exactly these circumstances that the Bill of Rights was imposed to protect. I mean, they were supposed to give taxpayers safeguards and protection against the IRS imposing these burdens. And in this situation, it's clearly merited that attorney's fees should be warranted. The IRS, at the very last minute, conceded that the summons was facially defective. The statute of limitations had expired. And I don't know why it took them so long to realize that when they were requesting documents over 9 years old. Well, how long did it take them to realize that the statute of limitations barred the claim? They say that it basically, the day they realized it, which was two months after filing a petition to quash, that they realized it, which is clearly not the case, because the taxpayers' counsel called them immediately and notified them that the statute of limitations had expired. And they failed to do anything with this information. And they still forced the taxpayer to file a petition to quash. And what's most disturbing about this case is the IRS has been so evasive, and they won't take any accountability for their action. There's nothing on the record that explains why this summons was issued, if it was issued in good faith, whether there actually was an investigation in Russia. You know, the taxpayer's primary concern here is that there's questions as to the corruption in Russia. And if the IRS is blindly following Russian requests without doing their due diligence or without following IRS procedures, taxpayers can be damaged. And in this case, they were. They lost their biggest contract, and they're pretty much out of business. Would you go back on the chronology? The June letter from Pacific Fisheries to the IRS, June 23, which says statute of limitations, problems, problems with these subpoenas. Where does that fall with respect to the phone call, and then the IRS's later decision to not go ahead with the quash? I believe that letter was issued after the phone call. The phone call was the first step. Right when we found out about this summons, we only had a few days to file the petition to quash. As we said, there was problems with notice. So the taxpayers did not receive notice. How did you find out? Well, they got lucky. Because basically, the Pacific Fisheries never received notice. But the employee, his son was at a residence. Basically, I guess it was addressed to Redmond instead of Redmond or vice versa. And they reissued it, I believe, at the last minute. And the son was home, and the son picked it up and called people immediately and said, what's going on here? And they contacted the council immediately. And because of the time-sensitive nature, and we didn't want to be forced into filing a petition to quash when it was facially defective, I mean, it was clearly asking for information outside the scope of any type of tax investigation. And there were concerns about the validity of this request. So basically, we called the IRS immediately. And the response, they didn't look at it very seriously, which was very concerning that they took the position that we were going to be forced to file a petition to quash no matter what. Okay, so let me just get this straight. First, you find out and you call the IRS, correct? Correct. And then you file a petition, your motion to quash? Yes, because there's a very short time frame. So you have a phone call into them. Yes. You file the request to quash. Then you send them a letter in June that says, you want more information because you're looking at the- Right, we wanted, we wanted- You're trying to see if there's an issue, right? Absolutely. And then after that, they say, please withdraw your motion to quash. We're wrong. Yeah, they basically, their position is,  they withdrew the summons. And if that's true, is it your, I mean, I'm having some trouble trying to understand the timing. If that's true, then you're saying that you still would, you still prevail and that they haven't shown their position was substantially justified if they said, as soon as we got this letter, we looked at it again, and we said, uncle. My concern is, is that's not when they knew the statute of limitations was expired. Like I said, on the face of it, going back nine years- So does your position rely on the phone call? Absolutely. Not only that, but in first issuing a summons that was so facially defective. I mean, this was a pretty egregious summons. And again, I mean, issuing it on a taxpayer who wasn't even under any type of tax investigation, and they concede that. There was investigation on Balenchenko. There was not a tax investigation on Pacific Fisheries. The Russian authorities requested information on Balenchenko with respect to an alleged tax investigation of him. Pacific Fisheries was merely his employer. He was not, he had no ownership interest in Pacific Fisheries. So are you saying, in effect, that you're entitled to fees because there was a wrongful issue of his summons? Yes. And basically- Does the statute go that far? Well, basically what the statute says is that the IRS bears the burden in showing that they were substantially justified in their position. And whether, you know, they took a position when they filed an answer, which is what I believe they could be arguing, courts have rejected and basically said that that's generally the case. But in situations like this, you need to look at the whole facts of the case. You need to look at each stage of the case. And in this circumstance, the initial issuance of that summons, the initial issuance of a summons that requested documents going back nine years, not following the published guidelines on notice procedures, and requesting documents of the taxpayer who was not under audit, that initial position was not substantially justified. And they continued to further that even after we notified them that the statute was expired. I mean, they had the opportunity. What is the timeline between the phone call and the letter? Well, I can tell you, I know the timeline between filing the petition to Quash and the phone call was probably within a week because we didn't have a lot there. And then the letter, I believe, was submitted after we filed the petition to Quash. Another concerning point is there seems to be somewhat of a pattern of withdrawing the summons and hiding behind the fact that they don't respond when requested and when they're requested to be held accountable. Okay. Well, so there's we're kind of mixing and matching. We're kind of trying to punish the IRS for at least some claim of continuing conduct, which isn't really before us. And that may be the case. We have no idea. Okay. So I'm just trying to really pin it down in this case. What you're saying is that even though once you sent them the formal letter, they said, please withdraw your motion to Quash, we're going to withdraw the subpoenas, that at that point, they can't say their position was substantially justified. I would even say at the time that they received notification of the call, the phone call, they received notice at that point in time that the statute had expired. They should have been alerted immediately and realized that if- And the phone call was? Within a week of filing the petition to Quash. And why that was critical is because we notified them that this taxpayer was going to be forced to file a petition to Quash, which is not an inexpensive endeavor. I mean, and basically, they had the opportunity to save the taxpayer here the fees. They didn't do it. I'm just wondering about how far the statute goes. Does it go so far as to entitle a taxpayer to expenses incurred as a result of a mistaken issue of a summons? Now, when it's a mistake, well, actually, the legislative intent, there's some hearings and there's some information on that, that basically, that's why the Taxpayer Bill of information from a taxpayer, and that taxpayer incurs expenses in fulfilling that request, and they later determine it was a mistake, that's exactly what the Taxpayer Bill of Right. Without any litigation, just the mere request for documents. Right. And that is actually in the briefing, and it was in the hearings that were associated with the Bill of Rights, that exact issue was presented. Are there any cases that have addressed that issue? Not that I know of, Your Honor. But the difference there would be they went ahead, they litigated it, and then they discovered they were wrong. And so here, what the precise issue we're left with is if somebody calls you up and tells you you're wrong, and when they write you a letter, you say, okay, I am wrong, or I'm going to stop and withdraw the subpoena, is that enough to trigger the statute? Where under the statute do you think that that's enough? What it is, is they have to show that they were substantially justified, and at the point in time when they received notification that the statute of limitations had expired, it was defective on its face, they should have immediately withdrawn that summons, and basically abated any type of incurrence of fees by the taxpayers, and they didn't do so. May I reserve the rest of the time? Yes. Thank you. Good morning, Your Honors. Gretchen Wolfinger for the United States. It appears that the chronology is of importance to the Court. According to the record, and this is excerpts of Record 46, the attorney, I believe that was Mr. Chacoin, stated that he called the IRS on May 10th, on or about May 10th. And his indication, his phrasing is somewhat unclear. He says on or about May 10th, perhaps earlier. He called the IRS to notify them that he believed, in his opinion, that there were problems with the subpoenas, including a statute of limitations problem. Because of the quick time deadline for filing a petition to Quash, the petition to Quash was filed three days later, on May 13th, 513. The letter was sent to the IRS on June 23rd. I believe that's excerpts of Record 40. The IRS recognized on, I believe it was 624, that the there was a problem with a statute of limitations and notified the bank. Counsel, didn't the petition to Quash, which was filed on the 13th, contain the statute of limitations issue? Yes, it did, Your Honor. So right then, they knew on 513. Yes. If I could finish the chronology. Then on 629, and I believe that's excerpts of Record 8, the attorney below in the record, the discussion of it, the attorney stated that he believed that, in his opinion, there were problems with the subpoenas, including the statute of limitations issue, and asked them to voluntarily withdraw their petition to Quash, which they didn't. Yes, it is true. If you look at the letter, the phone call ER-4647 in the It's clear that the IRS would have needed time to investigate those claims and determine if, in fact, they were correct. And three days later, the petition to Quash needed to be filed. So that clearly wasn't enough time. Do we know when that petition was served on the IRS? You gave us a filing date. When was it served? I don't know, Your Honor. Okay. Well, let me ask you this. It didn't properly serve the Pacific Fisheries. Is that correct? No, I would disagree with that, Your Honor. We discussed that in our brief. Under the third-party summons, we believe that they did correctly serve them. And service was made. It just wasn't, in one case, received. It was returned. But we discussed that in our brief. And would you like me to give you the pages? No, I can look it up. Okay. But you're saying that Pacific Fisheries was properly served, so they had notice much earlier than the 10th of May? No. We believe that under the statute for third-party summonses, this was a bank account, that that procedure was followed. Now, whether — I believe in one case, the notice may have been returned, but in the other, it appeared to have been received. So I don't know when actual receipt was, but we believe that pursuant to the third-party summons, service was — or notice was properly given. Returning to my point, the IRS would certainly need time to determine whether these allegations that there were problems with the summons, such as the statute of limitations. And as soon as it recognized  that there was a mistake, and it corrected its mistake. Is there no remedy if the IRS doesn't do its due diligence in advance, and you have records requested that are wildly beyond any statute? I don't know, Your Honor. I don't believe that there's anything in the record saying anything other than there was a statute of limitations. I'm just asking you in general, is it — would that mean there's no remedy if the IRS doesn't do its due diligence, and on its face, the — there's a statute of limitations problem, and then they just go ahead and file the subpoenas? I mean — Summons, Your Honor. Summons. I'm sorry, the summons. And then you've got the petition to quash after the fact. So you're kind of in this thing where you're saying, as soon as you bring it to our I don't have any obligation up front? Is that — I'm not saying that, Your Honor. What I'm saying is that on these facts, that there wasn't a problem, that they acted as quickly as they could when that problem was brought to their — That was after the fact. What Judge McEwen is asking is, if the government was wrong in the first place to have issued the summons, isn't that enough to trigger the obligation of the government to pay — pay for its crimes? I would — I would question the word crimes, Your Honor, in this context. But, no, I don't believe it is. And that's when we move to the attorneys' fees issue, whether their position was — whether the government's position was substantially justified. And it was in this case. And that takes into account timing. They didn't take a position. What the government did was it recognized that there was a problem. And when it recognized that, it remedied the problem as soon as it could. Other — Well, didn't the government have an obligation to say why they issued the summonses in the first place? An obligation to say to — When they're showing that it was substantially justified, which is clearly their burden, wouldn't they have to show that they had a reasonable basis for issuing the summons? I don't think on these facts they did, Your Honor. Essentially, there was a mistake. They recognized the mistake, and they acted as quickly as they could to remedy the mistake. Well, that's the question. Does the statute go so far as to say the government has to explain this was a mistake that could — did not reflect a failure to do due diligence? No. I don't believe it does, Your Honor. And if you look at the cases that we've relied on, they take the position that the government is — has not established a position until it actually answers, which implies that there is time up until the answer is filed for the — for the government to examine what its position is in light of — of the petition to quash and determine, in fact, what should occur. But are there cases that deal with the situation of a wrongfully issued summons? I don't — I'm not aware that there are, Your Honor. So this is maybe a case of first impression? I wouldn't say it's entirely a first impression. I think that Huffman and Donlan give clear guidance here that until the government answers or actually does take a position, it has that time to, in fact, examine the allegations of the other side to investigate them and then determine what its position will be established. And that was not the case here. So take a hypothetical. Suppose it turns out that the government was in the course of harassing the taxpayer by issuing baseless summonses. Would this statute apply to permit the taxpayer to recover its fees? Is that — would that situation be covered? I — I think it would, Your Honor, but perhaps in district — different contexts. If the subpoenas actually were baseless, we would — we would actually have had a proceeding on the petition to Quash where the government would at that point establish why the subpoena — the summonses were or weren't baseless. But we never got to that position here because the government acted first. If that — if it were, in fact, the allegation was that these subpoenas are baseless and harassing, the government would undoubtedly respond with — with either a response or a petition, a counterpetition to enforce, saying, here's our United States v. Powell declaration, why these subpoenas were issued in good faith, and why they aren't baseless. And we didn't get to that here because the government recognized earlier in the process that there was a problem. If — without deciding at this point whether they've waived the argument that there could be other avenues for sanctions, in that case that — that you're just hypothesizing, do you think that there would be sanctions available not only under this statute if the government didn't recognize that there had been a problem with the issuance of the summons, or that there might also be sanctions under the Court's inherent power, if it were properly raised? On — on this particular case, I'm not entirely sure the government recognized that there was a mistake and — and acted — Well, you're mixing and matching. I'm asking you about the case you — the hypothesis that Judge Schwarzer was just talking with you about. And you were saying, well, then there would be countermotions, and you would see if you were justified. My question specifically is, in that case, if the government were not substantially justified, do you think that sanctions would be available not only under this specific tax attorney's fee statute, but also under the Court's inherent power? I think that the — the primary remedy would be under the attorney's fees, and that for the Court to come down with further sanctions beyond that, it would have to look to the particular statute at issue. For example, that it — the government unduly protracted — protracted the litigation or — or caused some other problems. But the attorney's fees statute should be sufficient to address any — any harm. So your position really is that Huffman covers your circumstance, that once the government acknowledges a mistake early on, before an answer, before anything is going down the road, that that, in effect, lets the government off the hook under the statute? I wouldn't say I think the — letting the government off the hook is a bit of charged language, with respect, Your Honor. But I think what happens — Well, letting you off the hook for any claim of attorney's fees. There shouldn't be any liability on the government's part, because the government has to have time to investigate and determine whether the allegations of the taxpayer are, in fact, true. And it may be that there is something, as apparently in this case, that the government was unaware of, that they need to determine, in fact, for themselves that the position of the taxpayer is correct. And that was the timeframe that they took to do it. They didn't take a position. They acted — they acted first to resolve the issue. And they didn't continue to advance a position that was not justified. I think all the other arguments are covered in our brief, unless there are any further questions. I don't think that they were required to do so at this point of the proceedings, Your Honor. Again, had we gotten into a posture where we were responding to the petition to Quash, we would have been required to do that. And also, I would mention, as an aside, because this deals with a tax treaty request, it may be that a lot of this information is confidential. Well, under FOIA, they did release it. Yes. They did make a FOIA request, and there is a companion case that's pending in the court about — about what was produced. So it's — you can't really say to us on a hypothetical that this was confidential because they have furnished the information. They have furnished information, but I'm not entirely sure about what, Your Honor. And that's the subject of a — of the pending appeal. All right. Thank you. Thank you. Roberts, you're coined for the appellant. And if it's permissible with the Court, I will handle the rebuttal. That's fine. First of all, Your Honor — Would you speak up? First of all, Your Honors, this is a case of first impression. And the reason it is is because it considers the Taxpayer Bill of Rights that was enacted in 1996. That is the statute. And what it seems to me in this dialogue is being missed, is that you go to the statute and the Court misapplied the law. The law says we prevailed. We did not have the burden of establishing that the government was not substantially justified. There's no dispute about the error in the Court's opinion. But if you listen to the government's argument, they are saying, in essence, they were justified, that they needed time to — to respond to the phone call that I — I presented. But — Well, let's just take it as a practical matter. The burden is on the government, so now they're trying to argue that they've satisfied their burden because this Court made an error in the standard. If — is it your view that the government, upon receipt of your phone call, should have immediately withdrawn the summons? I — I asked them to, and they refused. Just — I do think — I do think they have some period of time to act reasonably, because one looks at all the facts and circumstances. And the problem that I have with — They don't have more than three days? Well, no. They may have more than three days. But the problem here is that the government not only refused to withdraw the summons and forced us to file our petition and forced us to continue to pursue this matter, what the government did is the government just withdrew and said that was sufficient to establish their burden of proof that they acted substantially — that they were substantially justified in their actions. When did they say that? When did they say that? Let's just go back. If you call them on May 10th and your petition was due on the 13th, when was your petition due? Was that the final date it was due? Yes. And fortuitously, we found this out, because the notice was misaddressed. That was not a question. Right. Well, let's stick with — let's stick with the problem, not forget the notice issue. Did you have any options for an extension, or was that a statutory filing date? Yes, that's correct. Okay. So the — your position then boils down to the fact that, based upon your phone call and the fact that you were up against a statutory filing date, that the government should have done something within three days. They should have done something. And I think they should have done something within three days, because on the very face of the summons, it shows that it was — the statute of limitations applied. One does not have to be a rocket scientist to see that it's asking for information going back 10 years. Now, giving that — I think our position, though, is, is that it's not necessarily a rigid test, that you look at all the facts and circumstances, and what happened here is we prevailed. The government had the burden of proving that its position was substantially justified. It put on no evidence of that, Your Honor. If you look at its brief, its sole position is that by merely withdrawing its summons and conceding the case before its answer, that rigid arbitrary date of filing the answer is what establishes that it acted reasonably. And we say under the new law, that's not the case. Okay. Well, then, if they — you say they should have done something in three days, but it's not exactly that rigid. So the only thing that happened between the time that the petition to Quash was filed and their determination that they would withdraw was that you wrote them a letter. Is that correct? I don't know my position, Your Honor. I don't know my position. Did anything else happen between those, between the time that the petition to Quash was filed and the time that they withdrew? We don't know what happened. We don't know because they haven't put on any evidence as to why they're — Well, is there anything in the record other than the fact that you wrote a letter and then the next thing that happens is they said, we withdraw? Well, as far as that time period, no, there is not, Your Honor. But there is other — there's other evidence in the record, and that is that the notice was not sent to the proper address. Secondly, under Section 7602, they did not notify the taxpayer. They intended to contact third parties. There was other evidence of what we consider to be unjustifiable conduct. And basically, the point of the statute is this, that if the government is going to — and they changed the law. And if the government is going to issue summonses, and if it's going to ask for information and force somebody to go to trial, and they're wrong, then — But they didn't force you to go to trial. I mean, that's why I'm trying to — you've got this fairly short time frame here. And how does their — what you characterize as unjustifiable conduct about the notice and the failure to — the receipt of the notice and the failure to notify as to the protecting of the third parties, how does that figure in to whether you were a prevailing party or not, and whether their position was substantially justified? I'm just trying to understand that as a legal matter. Okay. The failure to provide notice, what it does do, it shows that we were subject to considerable potential harm, which — which happened. And the reason we were forced to file a petition is because statutorily we did not. That information would be turned over to the Russian authorities. Correct. I mean, you had to do that in order to preserve your rights. Yes. Yes, Your Honor. We had to do that to preserve our rights. We had no choice. So we were forced to do it. That still doesn't mean that I had to necessarily send the letter. And the letter that I did send asked for all kinds of information. As Judge Fletcher correctly points out, our petition specifically raised the issue of the statute of limitations. My phone call raised the statute of limitations. I asked specifically in light of this that they withdraw the summons. I even asked for it afterwards, and I didn't get it. They refused to act until the very day that they were to file their answer. And, Your Honor, if we had not, that notice was misaddressed. It was by fortuitous circumstances. Okay. Well, let me just ask with a practical matter. What you're looking at is attorneys' fees, correct? We're looking at attorney we look for two things. One was attorney's fees. We've incurred these attorney's fees, and the statute said in the legislative history Yes, but let's stick to the question, okay? You're out of time. We're trying to stick to the you're you're asking for attorney's fees. That's basically it, correct? We're asking for two things. Okay. We're asking for attorney's fees, and we're asking for the right in the form of a sanction or condition that we permitted that they Right. That you be able to pursue that. But on the attorney's fees, if after filing the petition to quash, the only attorney's fees that you incurred with respect to the summons at that point was your letter to the IRS. Is that correct? That was the only action that was taken after the petition to quash? Well, in terms of that was one action that was taken, but we also incur attorney's fees in connection with dealing with our clients and the concerns that the client has. We have meetings with the client. Okay, that answers my question. Thank you. I wanted to ask one more question. Is it your position that they had to justify the filing of the summons or issuing the summons in the first place? Under the way the statute is now written, we prevailed. And if they wanted to avoid the position that we prevailed, they would have to come forward. They had the burden to show that their position was substantially justified. And if the government believed that it needed time and it needed 60 days to determine the statute of limitations, it should have put that evidence on. Well, you're mixing apples and oranges here. The question was whether the government had to establish that they substantially justified in the issuance of the summons, period. Is that your position? That's different from what they did after the summons was issued and you filed your petition to quash. You're correct, Your Honor. And I do think that the government afterwards had the burden. We know they do. We know that's what the statute says. To establish that at the time they issued the summons, that they were substantially justified in doing that. That was my question. Okay. Thank you. Thanks. Thank you very much. Thank you. The case just argued, Pacific Fisheries v. United States, is submitted.
judges: B. Fletcher, McKeown, Schwarzer